**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

March 18, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *George K. v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-01736-JMC

Dear Counsel:

George Karle, III ("Plaintiff") petitioned this Court on June 2, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  (ECF No. 1).  The Court has considered the record in the case as well as the parties' dispositive filings.  (ECF Nos. 8, 14, 16).  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his current Title II application for DIB and SSI on August 30, 2022, alleging disability as of October 16, 2020. (Tr. 17).[1] The SSA initially denied Plaintiff's application on February 1, 2023 and upon reconsideration on September 8, 2023. *Id.* Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. A telephonic hearing took place on May 21, 2024.  *Id.* Concluding that Plaintiff was not under disability since the alleged date of onset on October 16, 2024, ALJ Donald Neely denied Plaintiff's claim.  *Id.* at 26-27. Plaintiff appealed, and the decision became final on April 8, 2025, when the Appeals Council concluded there was no basis upon which to grant Plaintiff's request for review. *Id.* at 1-7.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 7) filed in this case.  When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform his past work given the limitations caused by his medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect his ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation.  If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "since October 16, 2020, the alleged onset date."  (Tr. 19).  At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "diabetes mellitus; peripheral circulatory disorder; foot callous; lesser toe amputation; and flat left foot with pulled tendon."  *Id.*

The ALJ also determined Plaintiff posttraumatic stress disorder (PTSD) and anxiety disorder were non-severe.[2]  *Id.* at 20.  In making that determination, the ALJ reasoned,

> The claimant's medically determinable mental impairments of posttraumatic stress disorder (PTSD) and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. The claimant's mental treatment records with National Pike and psychological consultative examinations confirm his diagnoses and consistent treatment but also show unremarkable mental status examinations with no support for any significant deficits in mental functioning. (Exhibits 2F/7, 10F, and 14F). For example, his consultative exams with Melinda Stein, Ph.D. in January and August 2023 showed 30/30 mini mental status exam (MMSE) results. His mental status examinations in his primary care records with Charm City Healthcare are consistently within normal limits. (Exhibits 8F, 13F, 18F/7).
> …
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. Under the law and regulations, this area refers to an individual's ability to learn, recall, and use information to perform

---

[2] Plaintiff has an additional diagnosis for major depressive disorder as of May 8, 2023.  Tr. 704. Subsequently, on March 6, 2024, a treating therapist indicated she had been treating Plaintiff since April of 2023 and assessed his diagnoses of anxiety disorder, PTSD, and possibly narcissistic personality disorder. Tr. 783.

work activities. The medical evidence of record, including mental status reports, generally shows no serious deficits in long term memory, short-term memory, insight, and judgment. The claimant did not indicate in his function report that he has any issues with understanding or remembering. (Exhibit 11E/6). The claimant was able to give a good history of his medical and mental health history to treating and examining practitioners and in his testimony. (Hearing Testimony). The claimant reported watching TV, listening to Talk Radio, going on dates, going to the library, visiting friends and relatives, and going to church, which requires some memory and understanding. (Exhibit 11E/5). He performs normal necessary household activities, such as paying bills, handling his finances, driving a car, caring for his pet dog, cooking, cleaning, and shopping, which require a basic level of understanding, remembering, and applying information. (Exhibit 11E).

The next functional area is interacting with others. In this area, the claimant has mild limitation. Evidence of limitation in this area refers to the claimant's capacity to relate to and work with supervisors, coworkers, and the public. The claimant did not indicate any issues with getting along with others in his function report. (Exhibit 11E/6). The medical evidence of record shows that the claimant generally interacted normally with all treating practitioners, often noting that the claimant was pleasant, cooperative, and in no distress and exhibited no serious deficiencies in eye contact, speech, or conversation. The claimant regularly goes out in public to go shopping, attend appointments, and go to church. The claimant reported socializing with family and friends both in and outside of the home. The claimant reported visiting his mother to help care for her, going on dates with women, and going to the library for social activity. (Exhibit 11E).

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. Evidence in this area of functioning concerns actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate. Although the claimant indicated in his function report some issues with task completion, the medical evidence of record shows the claimant generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace. The claimant's mental status examination results generally show the claimant had no serious problem in this area. Additionally, treating practitioners did not observe that the claimant was overly distractible or slow. The claimant reported watching TV, listening to Talk Radio, going on dates, going to the library, visiting friends and relatives, and going to church, which requires some concentration and persistence. He reported helping his 81-year-old mother regularly with her daily living. He has also reported doing a variety of daily tasks that require some concentration, persistence, and pace such as paying bills, driving a car, shopping in stores, cooking meals, doing laundry, washing windows, and maintaining his appointment schedule. (Exhibit 11E).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. This area refers to the claimant's ability to regulate emotions, control behaviors, and maintain well-being in a work setting. The

medical evidence of record shows the claimant did not usually complain about serious problems with adaptation and managing himself. Observations of treating practitioners generally show the claimant had no deficiencies in hygiene and wore appropriate attire. There is no evidence the claimant had serious problems being aware of normal hazards and taking appropriate precautions. The claimant was able to handle the mental demands of living independently, caring for his 81-year-old mother by visiting, shopping, and taking her to appointments, caring for his dog, doing laundry, cooking meals, paying bills, and shopping in stores. (Exhibit 11E). The claimant handles his own activities of daily living without significant assistance from others.

*Id.* at 19-21. At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 22; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

*Id.* at 23. In support of its RFC determination, the ALJ reasoned in part:

I find the assessment of the State Agency Psychiatric Consultants at the initial (McClain, Psy.D.) and reconsideration (Roskes, M.D.) levels that the claimant has no mental, medically determinable impairments is not persuasive. (Exhibits 3A and 6A). That assessment is inconsistent with the record evidence, discussed above, showing diagnoses of PTSD and depression in the context of the claimant's reported history of childhood trauma.

I find the January and August 2023 psychiatric consultative exams from Melinda Stein, Ph.D., mostly persuasive. Although the exam reports do not provide much specific insight into the claimant's mental health, the findings of normal functioning as shown with his 30/30 MMSE scores are generally consistent with the record evidence and are supported by the claimant's normal daily activities as described in his function report. (Exhibits 11E, 8F, 13F). Dr. Stein's assessment consistently reflects that the claimant is able to function well from a mental health standpoint.

*Id.* at 25. Prior to the established date of disability onset, the ALJ concluded that Plaintiff was capable of performing past relevant work as a landscape specialist, hauler, and driver. *Id.* at 26. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform work as a driver as generally performed, (DOT code 919.683-014). *Id.* Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since October 16, 2022, the date of the alleged onset of disability. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision warrants remand because the ALJ erred in finding that Plaintiff's major depressive disorder, PTSD, and anxiety disorder were "non-severe" at step two and the RFC assessment was not supported by substantial evidence because the ALJ failed to adequately incorporate the evidence of Plaintiff's mental health. (ECF Nos. 8, 16).  For the reasons that follow, the ALJ failed to properly consider the Plaintiff's mental impairments in determining his RFC.  As such, I will remand the case.

Step two requires an ALJ to evaluate a claimant's mental impairments. 20 C.F.R. § 404.1520. The SSA evaluates mental impairments by using a specialized technique known as the "Psychiatric Review Technique" (the "PRT").  *See* 20 C.F.R. § 404.1520a.  Under the PRT, an ALJ must assess a claimant's abilities to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).  From there, the ALJ determines one of five applicable ratings, those being (1) no limitation, (2) mild limitation, (3) moderate limitation, (4) marked limitation, or (5) extreme limitation.  20 C.F.R. § 404.1520a(c)(4).  After applying the special technique, the ALJ must assess the claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). "An RFC assessment is 'more detailed' than a special-technique analysis—to determine RFC, the ALJ must 'itemiz[e]' any functional deficits resulting from the limitations identified during the special-technique analysis." *Bereniced W. v. O'Malley*, Civil No. 23-1856-CDA, 2024 WL 3925082, at *2 (D. Md. Aug. 23, 2024).  As such, the ALJ "must do so even if they previously found that the claimant's mental limitations were 'mild.'" *Id.* (citing *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 430 (W.D.N.Y. 2022)).

If the ALJ determines that an impairment is "not severe" at step two, the claimant will not be found to be disabled on that basis.  20 C.F.R. § 404.1520.  Still, the RFC assessment must consider even findings of mild limitations. *Bereniced W.*, 2024 WL 3925082, at *2.  "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). "Because ALJs are required to consider all of

claimant's medically determinable impairments when assessing the claimant's RFC, including those that are not severe, courts have held that errors when determining a medically determinable impairment is not severe is harmless if the ALJ considers the not severe impairments in the ALJ's RFC assessment." *Hoyle v. Comm'r of Soc. Sec.*, 1:20-cv-00273-RJC, 2022 WL 680220, at \*3 (W.D.N.C. Mar. 7, 2022) (collecting cases).

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at \*3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at \*3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports her conclusion *and* build an accurate and logical bridge from [that] evidence to her conclusion.") (internal quotation omitted) (emphasis in original).

When the RFC assessment does not properly consider a claimant's non-severe impairments in determining the RFC, remand is warranted. *Hoyle*, 2022 WL 680220, at \*4; *see also Mascio*, 780 F.3d at 636. Here, the ALJ considered the Plaintiff's PTSD and anxiety disorder at step two, but not his major depressive disorder. Tr. 20-21. A limited discussion of Plaintiff's mental health treatment appears in the RFC analysis. Tr. 25. Accordingly, the operative question here is whether the ALJ properly considered the Plaintiff's non-severe impairments in the RFC assessment, without consideration for whether they were properly determined to be non-severe at step two.[3] Because the undersigned finds that the ALJ failed to properly consider the non-severe impairments

---

[3] Plaintiff's argument concerning the "snippets of Plaintiff's testimony to support [the ALJ's] non-severe finding" is well-taken. (ECF No. 8 at 10). Considering the general rule that improper findings can nevertheless constitute harmless error, the Court turns to the RFC assessment. *Hoyle*, 2022 WL 680220, at \*3.

in the RFC, it will be unnecessary to consider whether they were properly determined to be non-severe. *Hoyle*, 2022 WL 680220, at *4.

First, Plaintiff correctly points to several evidentiary conflicts in the record not accounted for in the ALJ's RFC assessment (or step two analysis). First, the ALJ omits any reference to the major depression disorder with which Plaintiff was diagnosed on May 8, 2023. Tr. 704. While perhaps not reversable on its own, the ALJ omits reference to many of Plaintiff's self-reported symptoms about his mental health and multiple provider statements that do not support the ALJ's opinion. Tr. 20, 341-48, 746, 783-87. For example, Plaintiff cannot walk for "too long," has to lay his pants on the floor to put them on, and cannot stand in the shower to reach his feet. Tr. 345. In the Function Report (Tr. 341-48) the ALJ relied upon to support his non-severe findings (and referenced in the RFC assessment), the Plaintiff reported that he "feel[s] like a failure" and "doesn't bother" interacting with others. Tr. 345. Subsequently, Brianna Lundy, LCPC, Plaintiff's treating therapist highlighted in an opinion Plaintiff's lack of social awareness and provided further support for a greater limitation concerning his mental health. Tr. 783-87. While the ALJ found the opinion of Melinda Stein, Ph.D. "mostly persuasive" in the RFC analysis, he failed to acknowledge or assess the portions of her opinion which indicated Plaintiff's "social interaction and adaption may be at times be affected by emotional disturbance. Judgment and insight may at times vary". Tr. 25, 746. Where the ALJ concluded that Dr. Stein's assessment "consistently reflects that the claimant is able to function well from a mental health standpoint," statements to which he did not refer, taken together with the other omitted testimony from Plaintiff and Ms. Lundy warrant greater discussion in the RFC. Instead, the ALJ included conclusory statements without elaboration. Tr. 25. Moreover, the ALJ failed to incorporate any discussion concerning how Plaintiff's PTSD, anxiety, and depression are supported by an RFC limitation to "light work." Where the ALJ vaguely referenced the "non-severe" impairments, the ALJ determined that both physical and mental impairments were non-severe. Tr. 22.

The Commissioner's arguments to the contrary are unpersuasive, as they do not account for the evidentiary conflicts in the record and incorrectly state the ALJ's obligation to consider non-severe limitations in an RFC. *See Bereniced W.*, 2024 WL 3925082, at *2 ("An RFC assessment is 'more detailed' than a special-technique analysis—to determine RFC, the ALJ must 'itemiz[e]' any functional deficits resulting from the limitations identified during the special-technique analysis."). As Plaintiff points out in the Reply brief, "[t]he Commissioner's defense of the ALJ's decision is not based on facts or findings from Plaintiff's hearing." (ECF No. 16 at 1). The Court agrees. The record as a whole demonstrates too many conflicts that tend to support Plaintiff's mental health claims without an adequate explanation in the RFC assessment. As such, meaningful review is frustrated. *Mascio*, 780 F.3d at 636. Therefore, the ALJ's opinion is not supported by substantial evidence. As such, I will remand the case.

## V. Conclusion

In sum, the Court agrees with the Platiniff that the ALJ and subsequently the Appeals Council failed to adequately explain Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is

REVERSED and REMANDED for further proceedings.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge